**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

**v.**

**Marty L. SOSBE, Defendant–Appellee.**

**No. 89SA511.**

Supreme Court of Colorado,
En Banc.

April 30, 1990.

John Suthers, Dist. Atty., and David L. Gilbert, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

David F. Vela, State Public Defender, and Kent R.P. Gray, Deputy State Public Defender, Colorado Sprmgs, for defendant-appellee.

Justice ERICKSON delivered the Opinion of the Court.

This interlocutory appeal by the prosecution pursuant to C.A.R. 4.1 seeks review of a suppression order by the district court. The district court suppressed physical evidence seized by police officers during a

---

search of the Defendant Marty L. Sosbe's car, as well as statements made by the defendant after he was arrested, on the grounds that the police officers illegally stopped the defendant's Buick Riviera automobile (Riviera). Because the officers had a specific and articulable basis to stop the defendant, we reverse the district court's suppression order and remand for further proceedings consistent with this opinion.

At the suppression hearing, the prosecution called Officer Morgan of the Colorado Springs Police Department who testified that on August 21, 1989, he and Officer Vigil were conducting a "high visibility patrol" in a marked patrol car in the vicinity of several suspected "crack houses" where crack cocaine was allegedly sold. The officers saw three males approach a dark colored Riviera. One of the men put his head inside of the car while the other two appeared to be acting as lookouts. From where the officers were parked, they could not see what took place inside the automobile. The three men saw the officers and walked away from the Riviera. At the same time the driver of the Riviera rapidly accelerated and drove away. The officers first attempted to contact the three men and then decided to question the driver of the vehicle. The officers concluded that the Riviera was traveling at a speed in excess of the speed limit. Rapid acceleration by the Riviera to a speed in excess of the posted limit was indicated in Morgan's opinion by a puff of blue smoke from an exhaust pipe.

The Riviera was stopped and Officer Morgan approached the defendant, Sosbe, who was driving, and asked him for identification. The defendant did not produce a driver's license, and Morgan saw an open beer can in the back seat of the Riviera. Morgan asked the defendant to get out of the car and requested permission to search the Riviera for other open containers. The defendant agreed to let Morgan search the Riviera and, between the two front seats, the officer discovered a "rock" of crack cocaine as well as a glass pipe of the type used to smoke crack cocaine. The defendant was arrested and was taken to the police station. At the police station, the defendant was given a *Miranda* warning and made inculpatory statements when he was questioned by Morgan.

Thereafter, the defendant was charged by information with possession of a Schedule II controlled substance,[1] driving while license denied, suspended, or revoked,[2] and violation of the mandatory motor vehicle insurance coverage provisions of section 42–4–1213, 17 C.R.S. (1984 & 1989 Supp.). Defense counsel made a motion to suppress all evidence seized from the Riviera and all statements made by the defendant to the police asserting that the officers did not have reasonable grounds to stop the defendant's Riviera and that the search was unlawful. The district court granted the defendant's motion and stated the following reasons for suppression:

> The incident regarding the Defendant's apparent acceleration did not occur until after the officers had shifted their attention to the Defendant. The officers attempted contact of the Defendant prior to the acceleration, did not have any reasonable and articulable basis [sic]. There was no connection of the [three] males to the alleged crack house. There was no information offered at the hearing that there was in fact a known crack house. There was never any observed exchange between the [three] males and the defendant.

> While the court understands the officers' thinking, that thinking does not rise to the level of reasonable suspicion.

■ On appeal, the sole issue is whether the evidence supports the district court's determination that the officers lacked reasonable grounds to stop the defendant's car. A police officer, lacking probable cause to arrest, may stop a person for investigatory purposes if the officer has a reasonable suspicion that the person stopped is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868,

---

1. Section 18–18–105, 8B C.R.S. (1986 & 1989 Supp.).

2. Section 42–2–130(1)(a), 17 C.R.S. (1984).

1884, 20 L.Ed.2d 889 (1968); *Stone v. People,* 174 Colo. 504, 508, 485 P.2d 495, 497 (1971); § 16–3–103, 8A C.R.S. (1986). A lawful investigatory stop must satisfy the following conditions: (1) there must be a specific and articulable basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to take place; (2) the purpose of the stop must be reasonable; and (3) the scope and character of the stop must be reasonably related to its purpose. *People v. Contreras,* 780 P.2d 552, 555 (Colo.1989). *See also Stone v. People,* 174 Colo. at 509, 485 P.2d at 497. The totality of the circumstances must be considered in determining the validity of the stop. *E.g., People v. Contreras,* 780 P.2d at 555.

▆ Here, the police officers observed the defendant driving at an estimated speed of forty miles per hour which was in excess of the speed limit in the residential area where the stop occurred. Section 42–4–1001, 17 C.R.S. (1989 Supp.) prohibits driving at a speed in excess of the speed limit. Officer Morgan's reasonable belief that the Riviera was speeding constituted legitimate grounds for the stop. *Stone v. People,* 174 Colo. at 509, 485 P.2d at 497. His observations supported the conclusion that the defendant was exceeding the speed limit and provided an objective factual basis for stopping the Riviera.[3] The officers' subjective intent to contact the defendant is irrelevant once objective grounds for making the stop arose. In *People v. Ratcliff,* 778 P.2d 1371, 1379 (Colo.1989), we said:

> While an officer's subjective intent is a factor which a court may consider in determining whether the purpose of an intrusion was reasonable, it is not critical to a resolution of that question. What is determinative is whether the purpose of the intrusion was reasonable in light of the objective circumstances confronting

the officer at the time and place in question.

(Citation omitted.) *See also People v. Harper,* 726 P.2d 1129, 1131 (Colo.1986) ("[T]he officer's subjective state of mind is not an appropriate standard for determining whether and when a person is in custody or under arrest.").

The district court erred by focusing on the subjective intent of the officers since the officers had an objective factual basis to stop the defendant's Riviera. Accordingly, we reverse the district court's suppression order and remand for further proceedings consistent with this opinion.

---

**3.** A stop occurs when a reasonable person would, under all the circumstances, believe that he or she is not free to leave. *People v. Tottenhoff,* 691 P.2d 340, 344 (Colo.1984). We need not decide in this case the precise point in time when the stop occurred. *See Michigan v. Chesternut,* 486 U.S. 567, 576, 108 S.Ct. 1975, 1981,

100 L.Ed.2d 565 (1988) (police not required to have "'a particularized and objective basis for suspecting [respondent] of criminal activity'" to initiate pursuit) (citing *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).